Gil Lawrence **AMANCIO**

v.

**TOWN OF SOMERSET.**

No. Civ.A. 98CV12810RGS.

United States District Court,
D. Massachusetts.

Nov. 23, 1998.

---

Elizabeth A. Billowitz, Michael A. Albert, Foley, Hoag & Eliot, Sarah Wunsch, Boston, MA, for Plaintiff.

Clement Brown, Horvitz & Brilhante, James P. Killoran, Fall River, MA, for Defendant.

*MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

Before the court are cross-motions for summary judgment contesting the constitutionality of a holiday display erected annually by the Town of Somerset on the front lawn of its Town Hall. The dispute arose when the plaintiff, Gil Amancio, a resident of Somerset, objected to the expenditure of Town funds to erect and maintain the display. The display consists of a Nativity creche, holiday lights, a

1. The parties have provided the court with photographs of the Town's 1997 Christmas display and apart from some disagreement over whether the Santa Claus figure is a recent addition, agree

wreath, a Christmas tree, and a plastic Santa Claus.[1]

At the heart of the dispute is the Establishment Clause of the First Amendment.

The "establishment of religion" clause ... means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between church and State."

*Everson v. Board of Education of Ewing*, 330 U.S. 1, 15–16, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

These themes were distilled by the Supreme Court into a concrete three part test in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster "an excessive government entanglement with religion."

that the photographs accurately depict the display that the Town has erected in the past, and will erect again, should it prevail in this lawsuit.

Id. 403 U.S. at 612–613, 91 S.Ct. 2105. A violation of any prong of this test renders a statute or act of government unconstitutional.[2]

■ Because publicly-sponsored Christmas displays are a cherished tradition in the United States, they have been the touchstone of several Supreme Court Establishment Clause cases. In *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), Chief Justice Burger, writing for a five to four majority, determined that a creche erected by the City of Pawtucket, Rhode Island, when displayed along with "a Santa Claus house with a live Santa distributing candy; reindeer pulling Santa's sleigh; a live 40-foot Christmas tree strung with lights; statues of carolers in old-fashioned dress; candy-striped poles; a 'talking' wishing well; a large banner proclaiming 'SEASONS GREETINGS'; a miniature 'village' with several houses and a church; and various 'cut-out' figures, including those of a clown, a dancing elephant, a robot, and a teddy bear,"[3] did not violate the Establishment Clause because "whatever benefit there [was] to one faith or religion or to all religions, [was] indirect, remote, and incidental." *Lynch*, 465 U.S. at 683, 104 S.Ct. 1355. In Justice O'Connor's concurring view, the religious symbolism of the Pawtucket creche was effectively muted by the enveloping host of non-religious artifacts associated with the secular aspects of the Christmas holiday. Id., 465 U.S. at 692, 104 S.Ct. 1355.[4]

Five years later, in *County of Allegheny v. ACLU*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), two holiday displays were at issue. The first, a creche depicting the Christian Nativity scene, was erected on the Grand Staircase of the Allegheny County Courthouse. The Courthouse was owned by Allegheny County and served as its seat of government. The creche was donated by a Roman Catholic group, and bore a sign to that effect placed on a wooden fence that bordered the creche on three sides. During the Christmas season, the County typically placed red and white poinsettia plants around the fence. The County also positioned small evergreen trees, decorated with red bows, behind the two endposts of the enclosure. The manger had at its crest an angel bearing a banner proclaiming "Gloria in Excelsis Deo" ("Glory to God in the Highest").

Justice Blackmun, a dissenter in *Lynch* but now writing for a new majority, held that the creche violated the Establishment Clause because:

> nothing in the context of the display detracts from the creche's religious message. The *Lynch* display composed a series of figures and objects, each group of which had its own focal point. Santa's house and his reindeer were objects of attention separate from the creche, and had their specific visual story to tell. Similarly, whatever a "talking" wishing well may be, it obviously was a center of attention separate from the creche. Here, in contrast, the creche stands alone: it is the single element of the display on the Grand Staircase.

*Allegheny*, 492 U.S. at 598, 109 S.Ct. 3086. Justice Blackmun also took note of the fact that the "creche sits on the Grand Staircase," the " 'main' and 'most beautiful part' of the building that is the seat of county government." Justice Blackmun concluded that under the circumstances:

> [n]o viewer could reasonably think that it occupies this location without the support and approval of the government. Thus, by permitting the 'display of the creche in this particular physical setting,' . . . the county sends an unmistakable message that it supports and promotes the Christian

---

2. The plaintiff's motion for summary judgment rests solely on the second *Lemon* prong. The Town, in its cross-motion for summary judgment, argues that its display is constitutional under all three prongs. The plaintiff persuasively demonstrates that there are disputed issues of fact affecting the first and third prongs that preclude the Town from obtaining summary judgment should the court reject plaintiff's motion.

3. *County of Allegheny v. ACLU*, 492 U.S. 573, 590, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).

4. As Justice Blackmun explained in *Allegheny*, 492 U.S. at 601, 109 S.Ct. 3086, while the government may not officially observe Christmas as a Christian holy day, "it may acknowledge Christmas as a cultural phenomenon."

praise to God that is the creche's religious message.

Id., 492 U.S. at 599–600, 109 S.Ct. 3086.

The second of the holiday displays in *Allegheny* was an 18 foot Chanukah menorah or candelabrum, placed just outside the City–County Building next to a 45 foot decorated Christmas tree. At the foot of the tree was a sign bearing the mayor's name and proclaiming a "salute to liberty." The menorah was owned by a Jewish group, but was stored, erected, and dismantled each year by the city.

Justice Blackmun ruled that the menorah display did not offend the Constitution.

> The display of the Chanukah menorah in front of the City–County Building may well present a closer constitutional question. The menorah, one must recognize, is a religious symbol ... [b]ut the menorah's message is not exclusively religious. The menorah is the primary visual symbol for a holiday that, like Christmas, has both religious and secular dimensions.... Accordingly, the relevant question for Establishment Clause purposes is whether the combined display of the tree, the sign, and the menorah has the effect of endorsing both Christian and Jewish faiths, or rather simply recognizes that both Christmas and Chanukah are part of the same winter-holiday season, which has attained a secular status in our society. Of the two interpretations of this particular display, the latter seems far more plausible and is also in line with *Lynch*.

> The Christmas tree, unlike the menorah, is not itself a religious symbol. Although Christmas trees once carried religious connotations, today they typify the secular celebration of Christmas.... The tree, moreover, is clearly the predominant element in the city's display. The 45-foot tree occupies the central position beneath the middle archway in front of the Grant Street entrance to the City–County Building; the 18-foot menorah is positioned to one side. Given this configuration, it is much more sensible to interpret the meaning of the menorah in light of the tree, rather than vice versa. In the shadow of the tree, the menorah is readily understood as simply a recognition that Christmas is not the only traditional way of observing the winter-holiday season. In these circumstances, then, the combination of the tree and the menorah communicates, not a simultaneous endorsement of both the Christian and Jewish faiths, but instead, a secular celebration of Christmas coupled with an acknowledgment of Chanukah as a contemporaneous alternative tradition.

*Allegheny*, 492 U.S. at 613–618, 109 S.Ct. 3086.[5]

Justice Blackmun, in distinguishing *Lynch*, criticized "[t]he rationale of the majority opinion ... [as] none too clear.... Although Justice O'Connor joined the majority opinion in *Lynch*, she wrote a concurrence that differs in significant respects from the majority opinion. The main difference is that the concurrence provides a sound analytical framework for evaluating governmental use of religious symbols." *Allegheny*, 492 U.S. at 594–595, 109 S.Ct. 3086.[6] In elaborating on

---

**5.** Justice O'Connor, while concurring in the result, took issue with Justice Blackmun's characterization of the menorah as an essentially secular symbol. Rather, she would have found that the display taken as a whole did "not convey a message of endorsement of Judaism or of religion in general." *Allegheny*, 492 U.S. at 634, 109 S.Ct. 3086.

**6.** Justice Blackmun also maintained that the dissenters in *Lynch* had agreed in substance with Justice O'Connor:

> "[t]he four *Lynch* dissenters agreed with the concurrence that the controlling question was 'whether Pawtucket ha[d] run afoul of the Establishment Clause by endorsing religion through its display of the creche.'" ... The dissenters also agreed with the general proposition that the context in which the government uses a religious symbol is relevant for determining the answer to that question.... They simply reached a different answer: the dissenters concluded that the other elements of the Pawtucket display did not negate the endorsement of Christian faith caused by the presence of the creche. They viewed the inclusion of the creche in the city's overall display as placing "the government's imprimatur of approval on the particular religious beliefs exemplified by the creche." ... Thus, they stated: "The effect on minority religious groups, as well as on those who may reject all religion, is to convey the message that their views are

Justice O'Connor's approach, Justice Blackmun noted that "[f]irst and foremost, [it] squarely rejects any notion that this Court will tolerate some government endorsement of religion. Rather, the concurrence recognizes any endorsement of religion as 'invalid,' ... because it 'sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.'" Id., 492 U.S. at 595, 109 S.Ct. 3086. Justice Blackmun then explained that

> the concurrence articulates a method for determining whether the government's use of an object with religious meaning has the effect of endorsing religion. The effect of the display depends upon the message that the government's practice communicates: the question is "what viewers may fairly understand to be the purpose of the display."

Id.[7]

■ While the Court has attempted to achieve consistency in its approach to Christmas displays, the fact-specific nature of its decisions provides a trial court with a decisional framework based, as Justice Blackmun intimates, more on a visual appraisal than a cerebral assessment. In this case, the question thus is whether Somerset's display of a creche, a Christmas tree and a Santa Claus looks more like the impermissibly religious display in *Allegheny* or more like the essen-

tially secular "winter wonderland" in *Lynch.* Like the creche in *Allegheny*, the creche in Somerset is displayed prominently at the seat of local government. As in *Allegheny*, the creche is the focal point of the display and there is no signage suggesting that anything is being celebrated other than the birth of Jesus. The Christmas tree does not dwarf the creche as the towering tree did the menorah in *Allegheny*.[8] Indeed, the tree is barely visible from the vantage of the creche. And unlike *Lynch*, there is no superabundance of secular symbols to dilute the religious message of the creche, only a rather forlorn Santa Claus stationed on the perimeter of the display.[9] In sum, I am constrained to conclude that Somerset's display violates the Establishment Clause because the centrality of its Nativity scene conveys to a reasonable viewer the constitutionally forbidden message that the Town of Somerset officially supports Christianity.

I recognize that this decision may seem a cruel blow to a sixty year tradition of celebrating a holiday that apart from its religious significance heralds a universal message of peace and good will. But to insist that government respect the separation of church and state is not to discriminate against religion, indeed it promotes a respect for religion by refusing to single out one or two creeds for official favor at the expense of all others. Justice Blackmun made this point well in *Allegheny*, 492 U.S. at 610, 109 S.Ct. 3086.

---

not similarly worthy of public recognition nor entitled to public support." ... Thus, despite divergence at the bottom line, the five Justices in concurrence and dissent in *Lynch* agreed upon the relevant constitutional principles: the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context. These general principles are sound, and have been adopted by the Court in subsequent cases.... Accordingly, our present task is to determine whether the display[s at issue in this case], in their respective "particular physical settings," has the effect of endorsing or disapproving religious beliefs. *Allegheny*, 492 U.S. at 596–597, 109 S.Ct. 3086.

**7.** Reconciling the majority's holding in *Allegheny* with the outcome in *Lynch*, however, is more complicated than Justice Blackmun's neatly drawn summary might imply. Compare *A.C.L.U.*

*v. Schundler*, 104 F.3d 1435, 1448 (3rd Cir.1997) (enjoining Jersey City from displaying a creche and a menorah in front of its city hall) with *Elewski v. City of Syracuse*, 123 F.3d 51, 55 (2nd Cir.1997) (holding that a city owned creche and Christmas tree erected in a public park adjacent to another park with a Christmas tree, lights, and a privately owned menorah did not offend the Establishment Clause).

**8.** The Town argues that a second municipal holiday display, which contains a menorah, and is located in front of the fire station should be factored into the evaluation as if the two displays were one. The fire station display, however, is located almost a mile from the Town Hall.

**9.** While a Christmas tree has come to be considered a mostly secular emblem of the holiday season, it retains some association with the Christian celebration of Christmas, particularly when it is used to accent a Nativity scene.

The government does not discriminate against any citizen on the basis of the citizen's religious faith if the government is secular in its functions and operations. On the contrary, the Constitution mandates that the government remain secular, rather than affiliate itself with religious beliefs or institutions, precisely in order to avoid discriminating among citizens on the basis of their religious faiths.

### ORDER

For the foregoing reasons, plaintiff's motion for summary judgment is *ALLOWED*. Defendant's cross motion for summary judgment is *DENIED*.

SO ORDERED.